# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Brian Anthony Varnado,<br><br>Petitioner,<br><br>v.<br><br>Tracy Beltz,<br><br>Respondent. | Case No. 20-cv-1643 (ECT/HB)<br><br>**REPORT AND RECOMMENDATION** |

HILDY BOWBEER, United States Magistrate Judge

This matter is before the Court on Petitioner Brian Anthony Varnado's Petition for Writ of Habeas Corpus [ECF No. 1]. Petitioner filed his habeas petition pursuant to 28 U.S.C. § 2254, challenging his conviction of possession of a firearm by an ineligible person. (Pet. at 1.[1]) Varnado is incarcerated at the Minnesota Correctional Facility in Faribault, Minnesota. (*Id.*) The petition was referred to this Court pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1 for the issuance of a report and recommendation. The Court concludes that Petitioner is not entitled to habeas relief and recommends that the petition be denied.

## I.    Background

In the fall of 2017 Petitioner was a suspect in a series of bank robberies that

---

[1] The pagination assigned by Petitioner to the Petition and accompanying exhibits is sometimes inconsistent or confusing. For clarity, all citations herein to the Petition, the exhibits thereto, and Petitioner's Memorandum in Support are to the page number assigned by the CM/ECF system.

authorities believed were linked. *State v. Varnado*, Case No. A19-0273, 2020 WL

614584, at *1–2 (Minn. Ct. App. Feb. 10, 2020). A confidential informant had first

identified Petitioner to police as a potential suspect and, on October 10, 2017, the

informant called the FBI with information that Petitioner was going to participate in

another bank robbery, this time of the Bremer Bank in St Anthony, Minnesota.

(Statement of Probable Cause (Pet.'s Ex. 2) [ECF 1-1 at 2].) Through surveillance and

the use of a GPS tracker, law enforcement observed Petitioner meet with an associate,

T.G. *Varnado*, 2020 WL 614584, at *2. The two men then drove to a neighborhood with

a bank in it and began to "loop" around the neighborhood. *Id.* After a while, the men

began to drive away from the bank and law enforcement officers suspected that their

surveillance had been discovered. *Id.* The officers then pulled the car over and told T.G.,

the driver of the car, to get out. *Id.* In the process, T.G. volunteered that Petitioner had a

gun in the glovebox of the vehicle. *Id.* The officers searched the car and discovered the

weapon. *Id.*

The state charged Petitioner with possession of a firearm by an ineligible person,

conspiracy to commit first-degree aggravated robbery, and attempted second-degree

aggravated robbery. However, the state dropped the attempted second-degree aggravated

robbery charge. *Id.* The district court also granted Petitioner's motion to dismiss the

charge of conspiracy to commit first-degree aggravated robbery on the basis that there

was insufficient evidence of an overt act in furtherance of the conspiracy. *Id.* Petitioner

waived his right to a jury trial. *Id.* On the second day of the bench trial, Petitioner fired

his public defender and began to represent himself pro se. *Id.* The district court found

Petitioner guilty of possession of ammunition or a firearm by an ineligible person and sentenced him to 60 months in prison.

Petitioner appealed his conviction to the Minnesota Court of Appeals. With the assistance of appellate counsel, Petitioner argued that the district court erred when it allowed the state to introduce the gun found during the vehicle search, because the traffic stop that predicated the search was not supported by a reasonable, articulable suspicion. *Id.* Petitioner also acted pro se to file a "supplemental brief" which raised six additional but overlapping arguments: (1) law enforcement did not have probable cause to stop the car; (2) conviction of the firearm-related offense is double jeopardy, since the district court concluded there was insufficient evidence to support the charge for conspiracy to commit first-degree aggravated robbery; (3) the FBI agent's affidavit was contradictory; (4) Petitioner received ineffective assistance of counsel; (5) law enforcement did not have probable cause to stop the vehicle; (6) the GPS device used to track his movements was illegally placed without a warrant. *Id.* at *5–7.

The court of appeals upheld the conviction against all challenges. *Id.* Petitioner sought review by the Minnesota Supreme Court. (Pet. at 2.) That application again raised the claim that counsel had raised in the appeal below (the "counseled" claim)— namely, that the district court erred when it did not suppress the gun as the fruit of an illegal seizure because the traffic stop was not supported by reasonable, articulable suspicion—and also cited the "multiple issues" raised in Petitioner's supplemental brief. (Resp.'s App'x at 142 [ECF No. 12].) The Minnesota Supreme Court denied review on April 28, 2020. (Pet. at 2; Resp.'s App'x at 150.) Petitioner did not appeal that decision

to the U.S. Supreme Court.  (Pet. at 3.)

In the habeas petition filed in this Court, Petitioner makes the same or similar

arguments that he raised on appeal in his pro se supplemental filing:

- Ground 1: Lack of probable cause (for the traffic stop)

- Ground 2: Double jeopardy

- Ground 3: Unconstitutional affidavit

- Ground 4: Ineffective assistance of counsel

- Ground 5: Invalid traffic stop

- Ground 6: Invalid consent to attach a GPS device

Respondent asks the Court to deny Petitioner's habeas petition in its entirety on

the grounds that (1) Petitioner failed to fairly present the federal nature of his claims to

the Minnesota Supreme Court, such that they are now procedurally defaulted, or, in the

alternative, (2) none of his claims was resolved in a manner that is contrary to or involved

an unreasonable application of clearly established federal law as determined by the

United States Supreme Court.

## II.    Discussion

Under 28 U.S.C. § 2254 (the Antiterrorism and Effective Death Penalty Act of

1996 ("AEDPA")), a federal court "shall entertain an application for a writ of habeas

corpus on behalf of a person in custody pursuant to the judgment of a state court only on

the ground that he is in custody in violation of the Constitution or laws or treaties of the

United States." 28 U.S.C. § 2254(a).

### A.    Fair Presentation

As a threshold matter, before a state prisoner may seek federal habeas relief

under § 2254, he "must 'fairly present' his federal claims to the state courts." *Turnage v.*

*Fabian,* 606 F.3d 933, 936 (8th Cir. 2010).  This requirement gives states the

"opportunity to pass upon and correct alleged violations of their prisoners' federal

rights." *Id.* (quotations omitted).  The petitioner bears the burden of presenting the

substance of his federal claims in each appropriate state court. *Id.*  In so doing, it is not

enough to recite "only . . . the facts necessary to state a claim for relief" or to "make a

general appeal to a constitutional guarantee as broad as due process," *Gray v.*

*Netherland,* 518 U.S. 152, 163 (1996) (quotations omitted).  Instead, "in order to fairly

present a federal claim to the state courts, the petitioner must have referred to a specific

federal constitutional right, a particular constitutional provision, a federal constitutional

case, or a state case raising a pertinent federal constitutional issue in a claim before the

state courts." *Turnage*, 606 F.3d at 936 (quotations omitted).  That is, the petitioner must

"explicitly [refer] the state courts to the United States Constitution or federal case

law." *Wyldes v. Hundley*, 69 F.3d 247, 251 (8th Cir. 1995) (quotations omitted).  If the

petitioner does not fairly present a federal claim to the state courts with reference to the

federal law underpinning the claim, those claims are generally defaulted. *Turnage*, 606

F.3d at 936.

Respondent argues that Petitioner did not fairly present his federal claims in his

appeal to the Minnesota Supreme Court.  Specifically, Respondent points out that the

Petition for Review to the Minnesota Supreme Court focused largely on the "counseled"

claim raised to the court of appeals and only summarily addressed the claims Petitioner

had raised in his pro se "supplemental brief."  As to the counseled claim challenging

whether there was a reasonable, articulable suspicion to support the vehicle stop,

Respondent points out that the petition to the Minnesota Supreme Court grounded that

claim only in state law, not federal law.  (Resp.'s Mem. at 13–14.)  As to Petitioner's pro

se arguments, the Petitioner for Review offered only the following conclusory statement:

> This Court also should grant review to determine whether any of the numerous claims Varnado raised in his pro se brief warrant a reversal or a new trial. See (Slip Op. 12-17.) The issues Varnado raised include the lawfulness of the traffic stop, double jeopardy, ineffective assistance of counsel, and other important issues that this Court should review before affirming his conviction and requiring him to serve the remainder of his lengthy prison term.

(Resp.'s App'x at 144.)  The Petition for Review did not otherwise elaborate on those

claims and did not refer to the specific U.S. Constitutional provisions or federal case law

underlying those claims.

In order to satisfy the fair presentation requirement, a petitioner must have

presented the federal nature of his claims to each level of the state courts, *Baldwin v.*

*Reese*, 541 U.S. 27, 29 (2004), and in states with two tiers of appellate review, a

petitioner must have raised his federal claims to both levels before presenting his claims

in a federal habeas petition, *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  A

petitioner ordinarily does not "fairly present" a claim to a state court "if that court must

read beyond a petition or a brief (or a similar document) that does not alert it to the

presence of a federal claim in order to find material, such as a lower court opinion in the

case, that does so." *Baldwin*, 541 U.S. at 32.

Courts in this circuit have concluded that a petitioner's failure to cite any federal

cases or constitutional provisions in his petition to the state supreme court is a procedural

default. In *Johnson v. Symmes*, the petitioner referenced federal caselaw in his brief to

the Minnesota Court of Appeals but did not include any federal law in his petition for

review to the Minnesota Supreme Court, so his claim was defaulted. Case No. 11-cv-

2610 (RHK/JJG), 2012 WL 3115779, at *6 (D. Minn. July 2, 2012), *report and*

*recommendation adopted by* 2012 WL 3065547 (D. Minn. July 27, 2012) *and* 2012 WL

3136521 (D. Minn. Aug. 1, 2012). In *Wickner v. Fabian*, the district judge adopted the

magistrate judge's recommendation that a claim be dismissed as procedurally defaulted

where both the filings before the Minnesota Supreme Court and the habeas petition cited

only state law cases. Case No. 06-cv-1727 (DWF/RLE), 2007 WL 1201621, at *5 (D.

Minn. Apr. 20, 2007). The court held it was insufficient that the Minnesota Court of

Appeals had cited federal law in its decision and that the other briefing had

"implicate[d]" certain federal rights. *Id.* Likewise, the fact that there may be parallel

rights arising under both federal and state constitutional law does not abrogate the

requirement that the federal underpinnings for a claim be fairly presented. For example,

a recent decision from the United States District Court for the Eastern District of

Arkansas held that a habeas petitioner had procedurally defaulted on his federal speedy

trial claim where he had only raised a state speedy trial claim before the state appellate

courts. *Carter v. Kelley*, No. 5:17-CV-00069-JTR, 2019 WL 1371845, at *15–16 (E.D.

Ark. Mar. 26, 2019), *appeal dismissed*, No. Case 19-1876, 2020 WL 6256718 (8th Cir.

Feb. 6, 2020), *cert. denied*, Case No. 20-5722, 2020 WL 6551824 (U.S. Nov. 9, 2020).

Here, although Petitioner's briefing before the Minnesota Court of Appeals cited

federal constitutional provisions and case law, his petition to the Minnesota Supreme

Court did not.  Instead, it referred only to state caselaw.  Although some of those state

cases themselves cite federal caselaw, *see, e.g., State v. Timberlake*, 744 N.W. 2d 390,

393 (Minn. 2008) (quoting *Terry v. Ohio*, 392 U.S. 1 (1968), among others), that is not

enough to "fairly present" federal claims to the Minnesota Supreme Court, particularly

where the cited state court decisions also discussed and relied upon state constitutional

law.  *See, e.g., Timberlake*, 744 N.W. 2d at 393 ("Both the United States and Minnesota

Constitutions protect against 'unreasonable searches and seizures.' U.S. Const. amend.

IV; Minn. Const. art. I § 10.").  And the conclusory request that the Minnesota Supreme

Court review the court of appeals' rejection of "any of the numerous claims Varnado

raised in his pro se brief . . . [including] the lawfulness of the traffic stop, double

jeopardy, ineffective assistance of counsel," made no explicit mention of federal law.

The Minnesota Supreme Court would have had to "read beyond" the petition to attempt

to discern the presence of possible federal claims.  *Baldwin*, 541 U.S. at 32.

Accordingly, the Court concludes that none of Petitioner's habeas claims were

fairly presented as federal claims to the Minnesota Supreme Court.  Thus, they are

procedurally defaulted.

**B.    Contrary to Clearly Established Law**

The Court has concluded that Petitioner's claims are procedurally defaulted, so it

need not look further into his arguments.  Nonetheless, out of an abundance of caution,

the Court proceeds to the merits of Petitioner's claims since a court may also deny a

petition for a writ of habeas corpus "on the merits, notwithstanding the failure of the

applicant to exhaust the remedies available in the courts of the State."  28 U.S.C.

§ 2254(b)(2).

Habeas relief under 28 U.S.C. § 2254 may be warranted in three circumstances:

(1) when a state court decision was contrary to clearly established federal law, (2) when a

state court decision involved an unreasonable application of clearly established federal

law, or (3) when a state court decision "was based on an unreasonable determination of

the facts in light of the evidence presented."  28 U.S.C. § 2254(d)(1), (2).

The United States Supreme Court discussed the meaning of the "contrary to" and

"unreasonable application" clauses of § 2254(d) in *Williams v. Taylor*, 529 U.S. 362

(2000).  A state court decision is "contrary to" the Supreme Court's precedent if it

"arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of

law," or if it "confronts facts that are materially indistinguishable from a relevant

Supreme Court precedent and arrives at a result opposite to ours."  *Williams*, 529 U.S. at

405.  A state court decision is an "unreasonable application" of Supreme Court precedent

if it "identifies the correct governing legal principle from [the Supreme] Court's decisions

but unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413.

The habeas court must "ask whether the state court's application of clearly established

federal law was objectively unreasonable."  *Id.* at 409.  A federal court may not find a

state adjudication to be unreasonable "simply because that court concludes in its

independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

As to the third clause of § 2254(d), a federal habeas court "presumes that the state court's factual determinations are correct." *Lee v. Gammon*, 222 F.3d 441, 442 (8th Cir. 2000) (citing § 2254(e)(1)). This deference applies to factual determinations made by the state trial and appellate courts. *Sumner v. Mata*, 449 U.S. 539, 547 (1981). The petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Whitehead v. Dormire*, 340 F.3d 532, 539 (8th Cir. 2003).

In examining the merits of Petitioner's claims, this Court will "look through" the decision of the Minnesota Supreme Court to the last reasoned opinion of the Minnesota Court of Appeals, which was the last related state court decision that provides a relevant rationale. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground.").

### 1.    Lack of Probable Cause (Ground One)

Petitioner's first claim is that the traffic stop that led to the discovery of the gun in the glove compartment was not supported by probable cause. Ground One contends that the stop was unlawful because the purpose of the stop was to investigate a robbery conspiracy which, Petitioner reminds the Court, is a crime of which he was not convicted. This argument, along with many of Petitioner's other arguments, relies on the Hennepin County District Court's determination that there was not probable cause to support the

charge for conspiracy to commit first-degree aggravated robbery based on its finding that

there was insufficient evidence of an overt act in furtherance of the conspiracy.  (*See* Pet.

at 6 (describing the supporting facts for Ground One by pointing out the district court's

finding that there was a lack of probable cause to support "count (2) Conspiracy to

Commit First Degree Aggravated Robbery (the initial charge that gave rise to the

justification in its inception of the felony traffic stop)").)

As the Minnesota Court of Appeals noted, the constitutional prerequisite to pull

over a vehicle "is distinct from the probable cause required to present the conspiracy

issue to the jury," and the required level of proof is different.  In order to conduct a brief

investigative stop of a vehicle, an officer needs only a reasonable, articulable suspicion

that criminal activity is afoot.  *See United States v. Horton*, 611 F.3d 936, 940 (8th Cir.

2010) (citing *Terry v. Ohio*, 391 U.S. 1, 21 (1968).)  A reasonable suspicion is a lower

standard than probable cause, which is what is required for the state of Minnesota to

bring charges against a criminal defendant.  Minn. R. Crim. P. 11.04(1)(a).  Whether

there was reasonable suspicion to stop the car in which Petitioner was riding is an entirely

separate question—measured under a different standard—than whether there was

probable cause to support the conspiracy charge.  It is of no moment that the crime the

police were investigating when they stopped Petitioner's car was ultimately not the crime

for which Petitioner was convicted.

Petitioner offers no new evidence or argument in support of the first claim.  Since

the state court's decision was neither contrary to clearly established federal law nor

involved an unreasonable application thereof, the Court recommends denying the Petition

on Ground One.

### 2.    Double Jeopardy (Ground Two)

Petitioner's second claim is that his conviction for possession of a firearm violated

his right against double jeopardy because the state district court judge found a lack of

probable cause to support the "initial offense (charge)" for conspiracy.  (Pet. at 9; *see*

*also* Pet.'s Mem. [ECF No. 3 at 3].)

The Eighth Amendment's Double Jeopardy Clause "protects against a second

prosecution for the same offense after acquittal.  It protects against a second prosecution

for the same offense after conviction.  And it protects against multiple punishments for

the same offense."  *Brown v. Ohio*, 432 U.S. 161, 165 (1977).  Double jeopardy is not

implicated here.  Petitioner was not acquitted of the firearm-related offense and he has

not received a second prosecution or multiple punishments for that offense.  The state

court's finding related to the conspiracy charge did not affect the prosecution for the gun

offense and did not violate Petitioner's double jeopardy rights.  The Court recommends

denying the Petition on Ground Two.

### 3.    Unconstitutional Affidavit (Ground Three)

Petitioner's third claim is that FBI Special Agent Blake Hostetter "created an

unconstitutional affidavit," "misusing or abusing his (special agent) Blake S. Hostetter's

authority," in violation of Petitioner's right to due process under the Fifth Amendment of

the U.S. Constitution.  (Pet.'s Mem. ¶ 7 [ECF No. 3 at 4].)  The affidavit in question was

submitted by Special Agent Hostetter in support of the Criminal Complaint against

Petitioner. (*See* Statement of Probable Cause ¶ 2 [ECF No. 1-1 at 3].) It details Special

Agent Hostetter's role in investigating various bank robberies in the Twin Cities area in

2017, including his work with the confidential informant who identified Petitioner as a

suspect. (*Id.* ¶¶ 3–4 [ECF No. 1-1 at 5–6].) It also describes the traffic stop of the

vehicle in which Petitioner was riding, and the search incident to arrest in which the gun

was discovered in the glove compartment. (*Id.* ¶¶ 9–10 [ECF No. 1-1 at 9].[2])

Petitioner's argument as to this ground is not entirely clear, but it appears he takes

issue with the following sentence from Special Agent Hostetter's affidavit:

> Based on the above information I submit there is probable cause to believe
> that BRIAN ANTHONY VARNADO and TARON DAVID GILYARD did
> knowingly, by force, violence, and intimidation, attempt to take from the
> person and presence of a victim teller, United States currency belonging to
> and in the care, custody, control, management, and possession of the Bremer
> Bank, located in St Anthony, Minnesota, . . . and in committing such offense,
> did assault and put in jeopardy the life of another person by the use of a
> dangerous weapon . . .; and knowingly brandished a firearm . . . during and
> in relation to a crime of violence."

(*Id.* ¶ 9[3] [ECF No. 1-1 at 10].) Petitioner argues this statement contradicts the facts laid

out in the Statement of Probable Cause attached to the Complaint [ECF No. 1-1 at 2],

which states that Petitioner and T.G. were stopped as they were driving away from the

bank after having only circled it several times. (Pet.'s Mem. ¶ 11 [ECF No. 3 at 5].) In

other words, Petitioner argues the affidavit violated his rights because it seems to aver

---

[2] Petitioner's Exhibit 2 [ECF No. 1-1 at 5–13], the Affidavit of Special Agent Brian
Hostetter in support of the criminal complaint against Petitioner, contains duplicative
pages and jumbled page numbers. In addition, the original appears to have contained two
different paragraphs numbered 9. *Compare* ¶ 9 on ECF No. 1-1 at 9 *with* ¶ 9 on ECF No.
1-1 at 10. It appears the second ¶ 9 should properly have been numbered ¶ 13.
[3] See footnote 3 above. The reference here is to the second ¶ 9.

that Special Agent Hostetter had probable cause to believe Petitioner assaulted another

person and brandished a weapon during an attempt to rob the Bremer Bank, when in fact,

the Statement of Probable Cause makes it clear the alleged attempt had never progressed

that far.[4]

    But even assuming for the sake of argument Petitioner is correct that the Hostetter

affidavit is inconsistent with the facts as laid out in the Statement of Probable Cause, he

does not explain how that resulted in a violation of his right to due process under the U.S.

Constitution, let alone how it resulted in the conviction for which he is currently

incarcerated.  Petitioner was convicted for illegally possessing a firearm, not for

attempted bank robbery or conspiracy to commit bank robbery.  Habeas corpus relief is

only available to one who is in custody pursuant to the state process attacked in his

petition.  *See* 28 U.S.C. § 2254(a) (A ground for habeas relief is cognizable only when

the prisoner is "in custody in violation of [federal law]"); *Maleng v. Cook*, 490 U.S. 488,

490–91 (1989) ("We have interpreted the statutory language as requiring that the habeas

petitioner be "in custody" *under the conviction or sentence under attack* at the time his

petition is filed.") (emphasis added).  Here, there is no connection between the conviction

under attack—unlawful possession of a firearm—and  any alleged inconsistencies in

Special Agent Hostetter's affidavit, which pertained to the dismissed charges for

attempted bank robbery and conspiracy to commit bank robbery.  Certainly Petitioner

---

[4] Respondent seems to view Ground Three as another claim based on the allegedly
improper traffic stop.  (Pet.'s Mem. ¶¶ 7–13 [ECF No. 3 at 4–6].) The Court does not
read it that way.

cannot attribute the seizure of the firearm during the traffic stop to the affidavit, as the

affidavit was made *after* the traffic stop (*see* Hostetter Affidavit ¶¶ 9–10 [ECF No. 1-1 at

9], describing Special Agent Hostetter's role in conducting the traffic stop).  The Court

therefore recommends denying the Petition on Ground Three.

### 4.    Ineffective Assistance of Counsel (Ground Four)

In Ground Four Petitioner argues that he received ineffective assistance of counsel

when his attorney "intentionally raised irrelevant issues" and "refused to defend"

Petitioner's constitutional rights.  (Pet. at 15.)  In his Memorandum, Petitioner makes it

clear he believes both his trial and appellate counsel failed to effectively represent him.[5]

(*See* Pet's Mem. ¶¶14–15 [ECF No. 3 at 6–7].)  Although not clear, Petitioner's main

argument seems to be that his counsel did not argue that the FBI special agent's affidavit

was unconstitutional or otherwise advance the arguments that Petitioner separately raised

in his pro se brief to the appellate court.  This is slightly different from the argument

advanced to the Minnesota Court of Appeals, where Petitioner argued "that his attorney

did not move to dismiss the firearm-possession charge and that his attorney failed to

object to the state's use of leading questions on examination of the FBI special agent.  He

also states that his attorney did not raise certain constitutional defenses that he wished to

raise."  *Varnado*, 2020 WL 614584, at *6.

To the extent Petitioner seeks to raise a *different* claim than the one he presented

even to the Minnesota Court of Appeals, that claim is procedurally defaulted for failure to

---

[5] In his Memorandum Petitioner mistakenly refers to his Public Defender as an Assistant
Hennepin County Attorney.  (*See* Pet.'s Mem. ¶¶ 14–15 [ECF No. 3 at 6–7].)

fairly present it to the state court and this Court will not address it further. *Turnage*, 606 F.3d at 936. To the extent Petitioner is raising the *same* claim as that presented to Minnesota Court of Appeals, it is still procedurally defaulted for the reasons already discussed in Section II.A. above, but the Court will address it on the merits as well, as it has Petitioner's other grounds.

The Minnesota Court of Appeals evaluated Petitioner's argument using the two-prong test laid out in *Strickland v. Washington*, 466 U.S. 668 (1984), under which Petitioner must show both (1) that his counsel's performance fell below an objective standard of reasonableness, and (2) that he was prejudiced by that poor performance. *Varnado*, 2020 WL 614584, at *6. The court of appeals observed that Petitioner had not described how he was prejudiced by his attorney's actions, and that the court could not discern any prejudice from counsel's behavior. The court therefore concluded that Petitioner's ineffective assistance of counsel claim failed.

The Court sees nothing in the state court's reasoning or application of the law that is contrary to clearly established federal law or involved an unreasonable application thereof. There is also nothing in the Petition or the appellate court's decision to suggest it was based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, the Court recommends denying the Petition on Ground Four.

### 5.    Invalid Traffic Stop (Ground Five)

The Petition's fifth ground is similar to others the Court has already addressed. Petitioner argues the traffic stop was unconstitutional because "Varnado had not committed a crime on the day of arrest, attempted to commit a crime on the day of arrest,

16

nor was there a warrant or indictment for Varnado's arrest on the day of arrest." (Pet. at

18.)  Petitioner reiterates these points in his Memorandum, and again points out that the

state district court found there was not probable cause to support the conspiracy charge.

(*See* Pet. Mem. ¶¶ 17–19 [ECF No. 3 at 7–8].)

For the same reasons that Petitioner's other claims pertaining to the legality of the

traffic stop fail, this claim also does not merit habeas relief.  The court of appeals

concluded there was reasonable suspicion for the traffic stop based on the tipster's

information and law enforcement's observations and corroboration.  *See Varnado*, 2020

WL 614584, at *7.  Since those conclusions were not contrary to or an unreasonable

application of clearly established law, the Court recommends denying the Petition as to

Ground Five.

### 6.      Invalid Consent to Attach a GPS Device (Ground Six)

Petitioner's final claim is that "consent was given invalidly to put a global-

positioning system (GPS) tracking device on the vehicle that Varnado had been arrested

inside." (Pet. at 20.)  In his Memorandum Petitioner states that he believes the officer's

use of the GPS device violated his Fourth Amendment right to be free of illegal searches

and seizures.  (Pet.'s Mem. ¶ 21 [ECF No. 3 at 8].)

The GPS tracker was introduced in the underlying investigation after the

informant (who the state court referred to as the "confidential human source" or "CHS")

told officers that Petitioner had said he needed access to a car.  *Varnado*, 2020 WL

614584, at *1.  "With the CHS's consent, law enforcement placed a global positioning

system (GPS) tracker on a vehicle, which the CHS was to provide to Varnado." *Id.*

While surveilling the house, law enforcement officers saw an unidentified individual

deliver the vehicle with the GPS tracker to Varnado and T.G., who then got in the car and

left. *Id.* The officers followed the car to the neighborhood with the allegedly targeted

bank.

Petitioner's argument to the Minnesota Court of Appeals was that "law

enforcement inappropriately obtained consent from the CHS to place a GPS tracker on

the vehicle days after already having placed the device." *Id.* The Court assumes that is

the same argument Petitioner raises here, in Ground Six, although it is not so clearly

elucidated in his habeas filings.

The Court has reviewed the court of appeals' consideration of this matter and

concludes it was appropriate. The court of appeals concluded that the use of GPS device

constitutes a search under the Fourth Amendment, such that officers would need to have

obtained a warrant to place it, unless an exception to the warrant requirement applies. *Id.*

at *7. The court went on to note that consent is an exception to the warrant requirement.

*Id.* It then observed that Petitioner had offered no legal authorities in support of his

argument and concluded the matter was not fully briefed. Finally, it found that even if

the informant's consent to the use of the GPS device was invalid, the police had an

"independent source" for the information about Petitioner's location because they

personally followed the vehicle. *Id.* Because law enforcement "obtained the same

information it got from the GPS by also physically monitoring the tracked vehicle," the

evidence was still admissible under the independent source doctrine. *See Nix v. Williams*,

467 U.S. 431, 443, (1984) ("The independent source doctrine allows admission of

18

evidence that has been discovered by means wholly independent of any constitutional

violation."). This analysis is complete. The state court's ruling was not contrary to, or an

unreasonable application of, clearly established federal law. The Court recommends the

Petition also be denied as to Ground Six.

## IV.    Recommendation

Based on the foregoing and all the files, records, and proceedings herein, **IT IS**

**HEREBY RECOMMENDED** that Petitioner Brian Anthony Varnado's Petition for

Writ of Habeas Corpus [ECF No. 1] be **DENIED** and this action be **DISMISSED WITH**

**PREJUDICE**.


Date:  December 14, 2020                    *s/ Hildy Bowbeer*_____
                                            HILDY BOWBEER
                                            United States Magistrate Judge


## NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).